participants both that the terms of the current plan entitled them to health insurance at no cost throughout retirement and that the terms of the current plan are subject to change.")

A review of Tetley's SPDs mandates the same result. From 1975 to 2002 (the period during which the retiree medical plan was in effect), Tetley issued and distributed seven SPDs to its employees. (App. 3-6, 8-10; R56 Stmt. ¶¶ 18-33, 37-39, 53-59.) None of the SPDs contained any language that could reasonably be interpreted as promising lifetime retiree medical benefits. (R56 Stmt. at ¶¶ 19, 24, 26, 32, 38, 55, 58.) Even if some snippets of language could be picked out of the SPDs to cobble together an argument that lifetime retiree medical benefits might have been promised, the benefits described in the SPDs are qualified by the express reservation of rights contained in each document. (Id. ¶¶ 20-21, 25, 28-30, 33, 39, 56, 58-59.) Any shadow of a doubt that medical benefits could cease or that the plan could terminate at any time is thereby eliminated.

As shown above, plaintiffs' claims fail both parts of the test. First, the plan documents do not contain any statement that is reasonably susceptible to interpretation as a promise to provide vested retiree medical benefits. See Abbruscato, 274 F.3d at 98. Even if there were such language, each plan document contains an unambiguous reservation of rights provision. Id. Thus, plaintiffs' vesting claims fail based upon the policies and the SPDs describing the availability of retiree medical benefits. Abbruscato, 274 F.3d at 99-100; Joyce, 171 F.3d at 136. See Sprauge, 133 F.3d at 401.

### 2. Plaintiffs' Individual Retirement Agreements Do Not Promise Lifetime Medical Benefits

All plaintiffs rely on the plan documents in effect at the time of their retirements in support of their vesting claims. As set forth above, the medical plan documents and SPDs in

15

effect at the time of plaintiffs' retirement did not promise lifetime medical benefits and, in any event, contained express reservations of rights provisions. For this reason, Tetley is entitled to summary judgment against all plaintiffs whose contractual vesting claims are based solely on the medical plan documents.[5]

The plaintiffs who retired pursuant to an early retirement agreement, severance package, or similar program[6] seek to rely on their individual retirement agreements in support of their contractual vesting claims. See Abbruscato, 274 F.3d at 98 (finding that plaintiffs could rely on their early retirement agreements in support of their vesting claims). Although these plaintiffs may arguably be allowed to base contractual vesting claims on their individual retirement agreements and the documents incorporated therein, they may not rely on general exit letters, benefit outlines, or other extrinsic evidence in support of their contractual vesting claims absent a showing that the relevant plan documents are ambiguous. See Kunkel 274 F.3d at 85 n.7 (finding that "exit letters given to retiring employees which describe the retiree's . . . benefits" constitute extrinsic evidence of the benefit plan). Accordingly, the following section discusses each of the individual retirement agreements applicable to this subset of plaintiffs.

### (a)     Plaintiff Dubman

On January 20, 1999, plaintiff Dubman ("Dubman") and Tetley entered into a separation agreement whereby Dubman would remain employed by Tetley until July 16, 1999 or after receiving 60 days notice of termination, whichever was earlier. (App. 17 at T00769.) One

---

[5] The plaintiffs who fall into this group are Adams, Cerreta, Jenkins, Johnson, and Lattini.

[6] Plaintiffs Dubman, Mayes, Smith, Fondaco and Di Benedetto. The complaint identifies plaintiffs Dubman, Fondaco, and Lattini as the "early retirement plaintiffs" and plaintiffs Jenkins, Johnson, and Smith as the "downsized plaintiffs." The distinction drawn by these categories is unsupported by the factual record. For purposes of this motion, Tetley has grouped the plaintiffs into two categories based on the documents contained in their benefits files: those that rely solely on the medical plan documents and SPDs in support of their vesting claims and those who also rely on an individual retirement agreement.

16

condition of Dubman's separation from Tetley was that he would receive a severance package. (Id.) The separation agreement provided that Tetley would prepare a severance proposal "subject to [Dubman's] signature and agreement." (Id.)

On July 12, 1999, Tetley sent Dubman a draft severance proposal. (Id. at T00760-64.) With respect to retiree medical benefits, Dubman's severance proposal provides:

> You will be eligible for participation in the retired employees' Medical and Life Insurance Plans. Participation in the Dental, Long Term Disability and 401(k) Retirement Savings Plan ceases on your last day worked. The attached Benefit Outline at Retirement details your benefit entitlements.

(Id. at T00760.) The benefits outline attached to the proposal provided that "[m]edical coverage is continued to the age at which you and your spouse, separately, are eligible for Medicare." (Id. at T00763.)

On July 20, 1999, plaintiff Dubman received a letter and an election of medical insurance form from Tetley's Benefits Manager. (Id. at T00765-68.) The letter described the "benefits and other Tetley programs" that would be available to Dubman as part of his severance agreement if he elected to continue his coverage. (Id. at T00765.) The letter informed Dubman that he would remain "eligible to continue [his] family medical coverage . . . under the Tetley USA Inc. Retiree Medical Plan" upon his retirement but that "Tetley reserves the right to change, amend or terminate the Tetley USA Inc. Retiree Medical Plan at any time." (Id.) Plaintiff Dubman signed the election of medical coverage form on July 22, 1999. (Id. at T00768.) He also signed and accepted the severance proposal that same day. (Id. at T00762.)

The severance proposal, the attached benefit outline, and the letter discussing election of medical coverage constitute plaintiff Dubman's entire severance agreement with Tetley. (Id. at

17

T00760-68.)  None of the language contained in these documents can be reasonably construed as promising vested lifetime medical benefits.  For example, the proposal simply provides that Dubman would be eligible to participate in the retiree medical plan.  (Id. at T00760-64.)  As demonstrated in the following section, however, the description of a benefit without durational language does not create ambiguity as to whether the benefit is vested.  (See infra section discussing Mayes and Smith.)  Joyce, 171 F.3d 135; McMunn, 161 F. Supp. 2d at 115.  The language contained in the benefit outline completely undermines Dubman's claimed entitlement to lifetime retiree medical benefits because that language simply informs him that his eligibility status will change when he becomes eligible to receive Medicare.  (App. 17 at T00763.)  Even if the terms of Dubman's severance agreement were deemed ambiguous as to whether his retiree medical benefits were guaranteed for life, the express reservation of rights in the letter that was part of Dubman's severance agreement defeats his vesting claim as a matter of law.  See Abbruscato, 274 F.3d at 99-100; Joyce, 171 F.3d at 136; Sprauge, 133 F.3d at 401.  For these reasons, Tetley is entitled to judgment on plaintiff Dubman's contractual vesting claim.

### (b)    Plaintiffs Mayes and Smith

Plaintiff Mayes's husband retired from Tetley pursuant to an agreement dated January 19, 1993.  (App 23 at T01010-13.)  Plaintiff Mayes ("Mayes") was a covered dependent under her husband's retiree medical plan.[7]  (Id. at T01014.)  Plaintiff Smith ("Smith") retired from Tetley pursuant to an agreement dated June 14, 1991.  (App. 24 at T00886-88, T00882-83.)

Mayes' and Smith's retirement agreements are virtually identical with respect to retiree medical benefits.  (Compare App. 24 at T00887, with App. 23 at T01010.)  For example, their

---

[7] For ease of reference, plaintiff Mayes and her husband are collectively referred to as plaintiff Mayes.

agreements each provide that "[y]ou will be eligible for the Salaried Retirees' Benefit Programs beginning on the date of your retirement." (App. 24 at T00887; App. 23 at T01010.) The benefit summaries attached to their agreements also contain the following language: "Medical is continued provided you make the required employee contribution." (App. 24 at T00882; App. 23 at T01012.)

Mayes and Smith claim that the language in the benefit outline constitutes an unambiguous promise by Tetley to provide them with irrevocable medical benefits for the rest of their lives. Presumably, plaintiffs claim that this language created a vested right to retiree medical benefits because the benefits outline does not expressly limit their duration.

The Second Circuit and this Court have both held that contractual vesting claims based solely on the lack of durational language in plan documents are insufficient as a matter of law. Joyce, 171 F.3d 135; McMunn, 161 F. Supp. 2d at 115. In McCunn, plaintiffs relied on an SPD describing dependent retiree medical benefits as remaining available "so long as [the dependent] remained qualified as such" as the basis for one of their vesting claims. 161 F. Supp. 2d at 106. The SPD did not contain a reservation of rights. Id. This Court held that "the absence of durational language in an ERISA plan [does not create] an ambiguity as to vesting that permits or requires the Court to look at extrinsic evidence . . . ." Id. at 119. Accordingly, defendant's motion for summary judgment was granted as to this claim. Id. at 115 ("[W]e will not infer a binding obligation to vest benefits absent some language that itself reasonably supports that interpretation") (quoting Joyce, 171 F.3d at 135).

As demonstrated above, the plan documents in effect when Mayes and Smith retired reserved Tetley's right to terminate the plan and did not promise lifetime retiree medical

19

benefits.  Consequently, the only hope for these plaintiffs to escape summary judgment is by relying on their individual retirement agreements to support their vesting claims.  Based on the reasoning set forth in <u>Joyce</u> and <u>McCunn</u>, those documents do not contain any language that can reasonably be construed as promising lifetime benefits.  <u>Joyce</u>, 171 F.3d 135; <u>McMunn</u>, 161 F. Supp. 2d at 115.  Accordingly, Tetley's motion should be granted with respect to the contractual vesting claims of Mayes and Smith.

### (c)    Plaintiffs Fondaco and Di Benedetto

On December 16, 1994, Tetley offered qualified employees an early retirement plan.  The plan, or early separation offering, provided employees with enhanced severance pay if they retired on February 1, 1995.  Plaintiffs Fondaco and Di Benedetto (the "voluntary separation retirees") retired pursuant to this offering.  (App. 19 at T00780-81; App. 18 at T00982-83.)

While the early retirement plan offered enhanced severance pay, it did not change the standard benefits available to retirees.  (App. 19 at T00780-81; App. 18 at T00982-83.)  The December 16th letter provided that:

> [Y]ou will be eligible to retire under the Retirement Plan for Salaried
> Employees of Tetley Inc. with continuation of the standard benefits
> offered presently to retiring employees under the Retiree Benefit Program.
> The details of your severance and retirement benefits are contained in the
> enclosed Benefit Outline at Retirement.

(App. 19 at T00780-81; App. 18 at T00982-83.)  The benefit outline explained that "[m]edical coverage is continued provided you make the required employee contribution."  (App. 19 at T00782; App. 18 at T00984.)  The letter also contained a reservation of rights, explaining that "management will do all that they can to provide for your benefits now, but in the case of a sale there are no guarantees that the status quo will be maintained . . . [w]e cannot be sure what the

20

Tetley benefit program will be after a change in control." (App. 19 at T00780-81; App. 18 at T00982-83.)

Like Mayes and Smith, plaintiffs Fondaco and Di Benedetto presumably base their contractual vesting claims on the language of the benefits outline attached to their retirement agreements. (App. 19 at T00782; App. 18 at T00984 ("Medical coverage is continued provided you make the required employee contribution").) As discussed above, however, the lack of durational language does not establish contractual vesting of a welfare benefit. Joyce, 171 F.3d 135; McMunn, 161 F. Supp. 2d at 115. Fondaco and Di Benedetto's vesting claims also fail because, even if it were possible to interpret their retirement agreements as providing lifetime medical benefits, those agreements contain express reservation of rights provisions. (App. 19 at T00780-81; App. 18 at T00982-83); Abbruscato, 274 F.3d at 99-100. Summary judgment should be granted with respect to the contractual vesting claims of plaintiffs Fondaco and Di Benedetto.

**B.      Tetley Did Not Breach its Fiduciary Duty to Plaintiffs**

As demonstrated above, the Tetley plan documents did not create a vested retiree medical benefit. Furthermore, the plan documents expressly reserved Tetley's right to terminate the plan at any time for any reason. Accordingly, Tetley's termination of plaintiffs' retiree medical benefits was consistent with the terms of the plan and did not constitute a breach of fiduciary duty. Kunkel, 274 F.3d at 88 (noting that an employer does not act in a fiduciary capacity under ERISA when it amends an existing benefits plan in accordance with its terms).

The only remaining basis for recovery requires plaintiffs to show that Tetley breached its duty to deal honestly with plan beneficiaries. Id. Essentially, plaintiffs must show that Tetley

misrepresented the terms of retiree medical benefits by promising plaintiffs lifetime benefits with

the knowledge that the retiree medical benefits were not vested.  To succeed on this claim,

plaintiffs must show:

> (1) that Tetley was acting in a fiduciary capacity when it made the challenged representations[8];
>
> (2) that the challenged representations constituted material misrepresentations; and
>
> (3) that plaintiffs relied on these misrepresentations to their detriment.

McCunn, 161 F. Supp. 2d at 120.  Even construed in the light most favorable to plaintiffs, the

record of material facts shows that Tetley accurately described the benefits available to retirees.

For this reason and as set forth below, plaintiffs' breach of fiduciary duty claim fails as a matter

of law.

In the Second Circuit, employees alleging a breach of fiduciary duty must demonstrate

either (1) that their employer affirmatively and systemically misrepresented the availability of

retiree benefits under the plan, or (2) that the employer provided misleading information in

response to a specific question regarding whether retiree benefits could change.  Kunkel, 274

F.3d at 89; Abbruscato, 274 F.3d at 103; McCunn, 161 F. Supp. 2d at 122.

With respect to the first type of fiduciary duty claim, plaintiffs can point to no factual

record demonstrating that Tetley affirmatively and systemically misrepresented the availability

of retiree medical benefits.  To the contrary, the factual record shows that Tetley had a long

history of accurately describing the retirement benefits available to its employees.  (R56 Stmt.

---

[8] As shown later in this section, plaintiffs assert that a variety of Tetley employees communicated with them about their retiree medical benefits.  For purposes of this motion for summary judgment only, Tetley does not dispute plaintiffs' assertion that such employees were acting in a fiduciary capacity or that the alleged communications occurred as claimed by plaintiffs.

¶¶ 15-44, 52-68.)  None of the plan documents contained language that could reasonably be construed as a promise to provide lifetime benefits.  Moreover, since 1975, each of the SPDs issued by Tetley contained a clear reservation of rights.  Tetley also regularly communicated accurate information to employees regarding retirement medical benefits in the form of intra-company memoranda, letters, and other communications.  As a whole, the record demonstrates that Tetley consistently informed its employees that while the company intended to continue providing retiree medical benefits, those benefits could be terminated at any time.  (Id.)

Unable to point to any documents affirmatively promising lifetime retiree medical benefits, plaintiffs attempt to support their fiduciary breach claims by relying on an isolated few documents that do not have reservation of rights provisions.  Specifically, the plaintiffs allege to have received outlines and/or letters summarizing their benefits **following** their decision to retire.[9]  The alleged deficiency in these documents is that they lack durational language or other language explaining that their retiree medical benefits could be terminated at any time.  See supra note 8.  As demonstrated above, however, courts will not construe a document as containing an implicit promise of lifetime benefits simply because there is no durational limit set forth in the document.  Kunkel, 274 F.3d at 88; Joyce, 171 F.3d 135; International Union v. Skinner Engine Co., 188 F.3d 130, 150-51 (3d Cir. 1999) (upholding dismissal of plaintiffs' breach of fiduciary duty claims where there was "no competent evidence . . . that the company . . . affirmatively made representations to the effect that retiree benefits were vested and could

---

[9] (App 15 at T00908 ¶¶ 4-5, T00910-17 (Adams)); App. 16 at T00931 ¶ 4, T00934-38 (Cerreta)); App. 18 at T00980 ¶¶ 4-5, T00984-89 (Di Benedetto)); App. 17 at T00759 ¶ 8, T00760-68 (Dubman)); App. 19 at T00778-79 ¶¶ 6-7, T00780-89 (Fondaco)); App. 20 at T00839 ¶¶ 4-5, T00840-43 (Jenkins)); App. 21 at T00855 ¶ 3, T00857-58 (Johnson)); App. 22 at T00810-11 ¶¶ 5-6, T00814-17 (Lattini)); App. 24 at T00875 ¶ 4, T00877-78 (Smith)). Plaintiff Mayes also received a benefits outline and letter summarizing the benefits available to him during retirement.  (App. 23 at T01010-17.)

never be modified or terminated by the company").) Similarly, plaintiffs cannot sensibly claim that the absence of a reservation of rights in and of itself constitutes a violation of an employer's fiduciary obligations under the plan. The absence of a reservation of rights in an isolated document (which does not promise lifetime benefits) does not qualify as a misrepresentation. The language contained in these documents – that plaintiffs remained eligible to continue receiving medical benefits provided they paid the required contribution – was accurate and truthful at the time it was communicated. See McCunn, 161 F. Supp. 2d at 124 (noting that an employer does not have a duty to tell "retirees at every possible opportunity that which it had told them many times before -- namely that the terms of the plan were subject to change") (quoting Sprague v. General Motors, Inc., 133 F.3d 388, 405 (6th Cir. 1998).) For these reasons, plaintiffs' fiduciary duty claim fails where the sole support for the claim rests on the benefit outlines and retirement summaries attached to their affidavits.

Six plaintiffs describe alleged conversations that they had with other Tetley employees relating to their benefits.[10] Again, for purposes of summary judgment only, Tetley does not dispute that the employees were acting in a fiduciary capacity or the occurrence of the alleged conversations or their accuracy. Scrutiny of each of these verbal communications, discussed below, shows that none of them satisfy the test for establishing a fiduciary breach.

Adams does not allege to have asked a specific question regarding whether retiree medical benefits would be provided on a lifetime basis. Instead, she alleges to have asked a plant manager generally about retiree medical benefits. In response to her question, Adams claims that the plant manager told her that she "would be 'grand-fathered' and would get

---

[10] Adams, Cerreta, Di Benedetto, Dubman, Fondaco, and Smith.

24

prescriptions." (App. 15 at T00909 ¶ 6). This statement was accurate at the time it was made.

Adams was over 55 as of July 1, 1991 and was eligible to retire under the grandfather provision

relating to service requirements. (See id. at T00909 ¶ 2, T00913.) Prescriptions were also

covered benefits under the medical plan at that time. Accordingly, the alleged verbal statement

is not misleading and therefore does not constitute a material misrepresentation. McCunn, 161

F. Supp. 2d at 120 (observing that "[w]hether a misrepresentation is material is a mixed question

of law and fact based on whether there is a substantial likelihood that it would mislead a

reasonable employee in making an adequately informed decision") (multiple citations omitted).

For these reasons, this alleged oral representation is not enough to prevent summary judgment on

Adams's breach of fiduciary claim.

Cerreta does not allege that he asked a specific question regarding whether he would

receive lifetime medical benefits. Instead, he alleges to have asked Margaret Smith - Tetley's

human resources manager - whether he should purchase a supplemental policy after retirement.

(App. 16 at T00931 ¶ 5.) In response to this question, Margaret Smith allegedly said "no." (Id.)

Assuming that Cerreta inquired about Medicare supplement insurance, the response from

Margaret Smith was true at the time it was made. Supplemental health insurance is typically

purchased by Medicare eligible individuals to cover the cost of expenses not covered by

Medicare. Cerreta, who was 66 at the time of retirement, was Medicare eligible. However, the

retiree medical benefits that he received from Tetley operated in conjunction with Medicare just

like a supplemental insurance policy. Accordingly, the alleged statement by Margaret Smith was

accurate at the time it was made in that she informed Cerreta that the purchase of separate

coverage was unnecessary.  For these reasons, Cerreta's breach of fiduciary duty claim fails to the extent that he relies on this alleged oral representation.

Di Benedetto does not allege that he asked a specific question regarding whether he would receive lifetime medical benefits.  In fact, Di Benedetto never alleges to have asked any questions at all.  Rather, he states only that "[i]n all of my meetings with Tetley's Human Resources people, there was never any mention or indication made of Tetley eliminating my medical insurance."  (App. 18 at T00981 ¶ 6.)  Di Benedetto does not allege that anyone at Tetley ever suggested that his retiree medical benefits were vested.  Di Benedetto's breach of fiduciary duty claim, based solely on his description of meetings with Tetley human resources personnel, fails as a matter of law.

Neither does Fondaco allege that he asked a specific question regarding whether he would have lifetime medical benefits.  (App. 19 at T00778 ¶ 5.)  Instead, he claims that Tetley's CEO approached him during a tour of the facility where Fondaco worked and asked him whether he was going to take the early retirement package.  (Id.)  When Fondaco told him that he was going to accept, Tetley's CEO allegedly responded that "it was the thing to do" and that at least Fondaco would be "taken care of."  (Id.)  Fondaco does not allege that he relied on this statement in making the decision to retire.  (Id.)  In fact, he indicates that he had already decided to retire before having this alleged conversation.  (Id.)  Furthermore, in light of the informal nature and circumstances surrounding the conversation, it is not reasonable for Fondaco to have formed a belief that the CEO's alleged statements rose to the level of a specific representation assuring him of the irrevocability of his retiree medical benefits.  McCunn, 161 F. Supp. 2d at 124.  For these reasons, Fondaco's breach of fiduciary duty claim fails.

Smith also fails to allege that he asked a specific question regarding the existence of lifetime medical benefits. (App. 24 at T00875 ¶ 6.) Rather, he alleges that "[o]n at least one occasion before leaving Tetley, I was assured by Richard Rogers of Tetley that I would be covered with Tetley's health insurance upon leaving Tetley." (Id.) This statement was true at the time that it was allegedly made. Smith continued to remain eligible for retiree medical benefits after he left the company. Accordingly, the alleged statement is not misleading as a matter of law and, therefore, summary judgment should enter on Smith's breach of fiduciary duty claim.

Dubman is the only plaintiff who alleges to have asked a specific question regarding whether his medical benefits could change. (App. 17 at T00758 ¶ 6.) He alleges that he asked Tetley's CFO and Vice President of Human Resources whether he would receive lifetime medical benefits upon retirement and that they responded "yes." (Id.) Dubman alleges that this conversation took place in 1998. Even assuming the truth of this factual assertion, Dubman has not presented a viable fiduciary breach claim.

Dubman retired the year after this alleged conversation pursuant to a negotiated severance agreement. (Id. at T00760-68.) As set forth above, the terms of the severance agreement included an express reservation of rights. (Id. at T00765.) As this Court has found, "the particular context in which representations are made is crucial to assessing whether a representation about the duration of benefits is accurate or misleading." McCunn, 161 F. Supp. 2d at 124. In light of Tetley's long history of communicating its reservation of rights in SPDs and other communications to Dubman, and the fact that Dubman negotiated a severance agreement containing an express reservation of rights a year after the alleged conversation,

27

Dubman's purported reliance on an earlier verbal statement is unreasonable as a matter of law. See id. (noting that where "reservations of rights are used consistently in the plan documents, employees reasonably should have been aware that their retiree benefits were subject to change, and a company is not required to begin every communication by restating the caveat that it had reserved the right to change the plan.")  Accordingly, Dubman's breach of fiduciary duty claim fails to raise a disputed material fact that precludes summary judgment.

## V.    <u>CONCLUSION</u>

Tetley acted in accordance with the plan documents and its fiduciary duty toward its employees when it terminated retiree medical benefits in 2002. As demonstrated above, Tetley regularly communicated information about the availability of retiree medical benefits to its employees during the nearly thirty years that those benefits were in effect. Throughout that time, Tetley accurately informed employees that, while the company intended to continue making retiree medical benefits available, Tetley reserved its right to terminate those benefits at any time. Plaintiffs have failed to show that Tetley ever promised any of them that they would receive lifetime retiree benefits. Moreover, plaintiffs have failed to raise any disputed issue of material fact regarding Tetley's right to terminate the plan or Tetley's affirmative and systematic communication of that right to its employees. Accordingly, plaintiffs cannot succeed on their claims in this case. Tetley's motion for summary judgment should be granted.

DEFENDANT,

TETLEY USA INC.

By _____

Theodore J. Tucci (ct05249)
ttucci@rc.com
Michael J. Kolosky (ct22686)
mkolosky@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

## CERTIFICATION

This is to certify that a copy of the foregoing, including the accompanying exhibits, was hand-delivered to the following on this 6th day of April, 2004:

Steven A. Levy, Esq.
Friedman, Newman, Levy,
  Sheehan & Carolan, P.C.
One Eliot Place
Fairfield, CT 06824

and sent by first-class mail, postage prepaid, to the following on the 6th day of April, 2004:

Alvin Green, Esq.
Seham, Seham, Meltz & Peterson
145 E. 48th Street, Suite 5F
New York, NY 10017

_____
Theodore J. Tucci