## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VEILA VEYONNE ADAMS, | ) | |
| ANTHONY L. CERRETA, | ) | |
| SALVATORE SAM DIBENEDETTO, | ) | |
| HOWARD DUBMAN, | ) | |
| PETER FONDACO, | ) | |
| GLORIA ANNETTE PEARSON JENKINS, | ) | CIVIL ACTION NO. |
| BARBARA ANNE JOHNSON, | ) | 303 CV 649 (JBA) |
| JOSEPH A. LATTINI, | ) | |
| CRESSIE M. MAYES, Individually and as | ) | |
| Representative of HENRY FOSTER MAYES, | ) | |
| and ARTHUR J. SMITH | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TETLEY USA, INC. | ) | |
| | ) | |
| DEFENDANT. | ) | APRIL 6, 2004 |

### TETLEY'S LOCAL RULE 56(a)(1) STATEMENT

DEFENDANT,
TETLEY USA, INC.

Theodore J. Tucci (ct05249)
Michael J. Kolosky (ct22686)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

## **Table of Contents**

**Page**

I.    **The John Hancock Policy (October 1975-July 1995)**..................................................... 2

    A.    Summary Plan Descriptions (SPDs) and Communications  Describing the
    Tetley Employee Benefit Plans (1975-1995)...................................................... 4

        1.    1975 SPD ................................................................................. 5

        2.    Tenco SPD ............................................................................... 6

        3.    1985 SPD ................................................................................. 7

        4.    1989 SPD ................................................................................. 8

        5.    1991 Letter Describing Changes to Retiree Medical Benefits .......... 9

        6.    1993 SPD ............................................................................... 10

II.   **Tetley Benefit Strategy Project** .................................................................... 11

III.  **The United HealthCare Plan (July 1995 – December 2002)** ........................... 12

    A.    Summary Plan Descriptions (SPDs) and Communications Describing the
    Tetley Employee Benefit Plans (1995 - 2001)................................................. 14

        1.    1995 SPD ............................................................................... 14

        2.    1999 SPD ............................................................................... 15

IV.   **Termination of Medical Benefits for Retirees** ................................................ 16

    A.    Active Employees.......................................................................... 16

    B.    Retirees ....................................................................................... 17

V.    **The Individual Plaintiffs** ............................................................................. 18

    A.    Dubman ....................................................................................... 18

    B.    Fondaco ...................................................................................... 20

    C.    Lattini ........................................................................................ 21

D.  Jenkins ....................................................................................... 22

E.  Johnson ...................................................................................... 22

F.  Smith .......................................................................................... 22

G.  Adams.......................................................................................... 22

H.  Cerreta ........................................................................................ 23

I.  Di Benedetto................................................................................. 23

J.  Mayes .......................................................................................... 23

Pursuant to D. Conn. L. Civ. R. 56(a)(1), Tetley USA Inc. ("Tetley") hereby contends that there is no genuine issue to be tried as to the following material facts:

1.      Tetley is a Delaware corporation with headquarters in Shelton, Connecticut. Prior to February 28, 2003, Tetley was a wholly owned subsidiary of The Tetley Group Ltd., which is based in the United Kingdom.

2.      Tetley is a distributor of quality tea products in the United States.

3.      Tetley currently employs approximately 39 active salaried employees in the United States.

4.      In or about 1975, Tetley sponsored an employee benefit plan that included welfare benefits ("the plan"). (Margaret Smith Aff. (App. 32) ¶ 4.) The plan made a variety of coverages available to eligible employees and retirees, including medical benefits. (Id.)

5.      From 1975 to mid-1995, medical benefits were provided by Tetley through an insurance policy issued by John Hancock Mutual Life Insurance Company ("John Hancock"). (Id.) After mid-1995, medical benefits were provided by Tetley under a self-funded plan administered by United HealthCare (at the time known as MetraHealth). (Id.)

6.      At various times after 1975, Tetley offered employees the option to have their medical benefits administered by participating health maintenance organizations ("HMOs") instead of John Hancock or United HealthCare. (Id. ¶ 5.) Two of the plaintiffs in this case (Dubman and Fondaco) elected HMO coverage during their

- 1 -

employment. (Id. See infra section V ¶¶ 69-81.)  The additional HMO plan documents relating to these two plaintiffs are set forth in detail in Section V.

7.     None of the eight remaining plaintiffs elected HMO coverage at any time during their employment.  Instead, John Hancock and/or United HealthCare administered the medical benefits of the remaining plaintiffs.  (App. 32 ¶ 6.)

**I.     The John Hancock Policy (October 1975-July 1995)**

8.     From October 1, 1975 to July 1, 1995, Tetley employees were generally covered under a group welfare benefits policy issued by John Hancock Mutual Life Insurance Company ("the policy").  (App. 1.)  At various time throughout this period, eligible employees and retirees could also elect to receive medical coverage through a participating HMO.  (App. 32 ¶ 5.)

9.     The policy provided eligible employees with a variety of coverages, including life insurance, disability coverage, and medical benefits.  (App. 1 at T00003.)

10.     Under the terms of the policy, employees remained eligible to receive medical benefits after retirement:

> Employees who retire on or after the effective date of the Policy
> shall be eligible for all coverages they had prior to retirement except
> Accidental Death and Dismemberment Insurance.

(Id. at T00005.)

11.     The policy provision entitled "Discontinuance of Insurance of Employees" describes when insurance coverage terminated for a particular employee or class of employee as follows:

- 2 -

Part A:      The insurance of an employee under a particular coverage
             shall be discontinued on the earliest of the following dates:

    (1)      the date his classification changes to a class of
             employees which is ineligible for insurance under that
             coverage;

    (2)      the date as of which the policy is amended making the
             class of employees of which he is a member ineligible
             for insurance under that coverage; [or]

    (3)      the date of termination of that coverage for the class of
             employees of which he is a member.

Part B:      The insurance of an employee under all coverages for which
             he is insured shall be discontinued on the earliest of the
             following dates:

    (1)      the date of termination of his employment [];

    (2)      if his insurance is provided on a Contributory Basis,
             the date of expiration of the period for which he last
             made the required premium contribution to his
             Participating Employer for his insurance;

    (3)      the date the participation of his Participating Employer in all
             insurance under the policy is discontinued; [or]

    (4)      the date of termination of the policy.

(Id. at T00017.)

12.    The policy also includes amendment, renewal, and termination provisions. (Id. at

T00021.)  Those terms provide:

        The Policyholder [Tetley] may terminate this policy at any time by
        giving written notice of termination to the Insurer at its Home Office
        . . .

> No amendment, renewal, or termination of this policy shall require
> the consent or notice to any employee or beneficiary or other person
> having a beneficial interest herein.

(Id.)

13.    In February 1982, Tetley acquired Tenco, a division of The Coca-Cola Company.

The policy was amended to provide benefits coverage for Tenco employees acquired by

Tetley. (Id. at T00135.)  The policy amendment provides that "[Tenco] retirees retiring

[from Tetley] on or after February 4, 1982 and only after they have completed 5 years of

service shall be eligible for Health Coverages." (Id.)

14.    In August 1982, Tetley acquired S.A. Schonbrunn & Co. ("Schonbrunn") from the

American Maize-Products Company.  The policy was amended to provide benefits

coverage for Schonbrunn employees acquired by Tetley. (Id. at T00158.)  The policy

amendment provides that "[Schonbrunn] [s]ales representatives retiring on or after

September 1, 1982 shall be eligible for Life Insurance and Health coverages . . .

[Schonbrunn] [s]alaried employees retiring on or after September 1, 1982 shall be

eligible for Health coverages. (Id.)

### A.    Summary Plan Descriptions (SPDs) and Communications Describing the Tetley Employee Benefit Plans (1975-1995)

15.    From time to time, Tetley issued summary plan descriptions ("SPDs") to provide

information to current and former employees ("retirees") regarding the existence and

availability of benefits available under the employee benefit plans established by Tetley.

(App. 32 ¶ 8.)

- 4 -

16.     Prior to November 1989, the terms of Tetley's employee benefit plans were

summarized in a group insurance booklet ("booklet"). (Id. ¶ 9.) Thereafter, the terms of

Tetley's employee benefit plans were summarized in benefit highlights brochures

("highlights brochures"). (Id.) The booklets and highlights brochures constitute all SPDs

issued in connection with Tetley's medical benefit plan. (Id.)

17.     Tetley issued an SPD to every employee at the time of hire. (Id. ¶¶ 12-13.) Tetley

also notified all employees and retirees affected by changes to the retiree medical benefits

before those changes became effective. (Id. ¶ 11.) Employees and retirees were notified

of the changes either by SPD or by letter describing the changes. (See id. ¶¶ 12-16.)

### 1.     1975 SPD

18.     The first SPD describing Tetley's employee benefit plans, including retiree

medical benefits, was issued in or about 1975 ("1975 SPD"). (App. 3 at T00497-500;

App. 32 ¶ 12.) All employees, whether enrolled in an HMO or covered under the John

Hancock policy, received and were subject to the eligibility and other provisions of the

1975 SPD.

19.     The 1975 SPD defines the class of employees eligible to receive benefits as

including "[a]ll full-time salaried employees and salaried retirees." (App. 3 at T00501.)

20.     In describing when benefits terminate, the 1975 SPD provides that:

      A.    You shall cease to be insured under a *particular* coverage on the
            earliest of the following dates:
            . . .
            (2)    the date the Policy is amended making the class of employees
                  of which you are a member ineligible for insurance under that

- 5 -

coverage.

    (3)    the date of termination of that coverage for the class of employees of which you are a member.

B.    You shall cease to be insured under *all* coverages on the earliest of the following dates:

    . . .

    (2)    the date your Employer's participation in all insurance under the Policy is discontinued.

    (3)    the date of termination of the Policy.

(Id. at 00514.)

21.    The SPD further states that: "[n]o amendment, renewal, or termination of the Policy shall require the consent of or notice to any employee or beneficiary or other person having a beneficial interest thereunder." (Id. at T00500.)

## 2.    Tenco SPD

22.    In or about 1982, Tetley issued a summary plan description to the employees of its newly acquired Tenco division ("Tenco SPD"). (App. 4 at T00553-610; App. 32 ¶ 12.) All Tenco employees, whether enrolled in an HMO or covered under the John Hancock policy, received and were subject to the eligibility and other provisions of the Tenco SPD.

23.    The Tenco SPD defines the class of employees eligible to receive benefits under the policy as "[a]ll full-time TENCO Salaried employees." (App. 4 at T00558.)

24.    With respect to retiree benefits, the Tenco SPD provides that "[r]etirees retiring on or after February 4, 1982 and only after they have completed 5 years of service shall be eligible for Health Coverages." (Id.)

25.    The Tenco SPD contained termination provisions identical to those set forth in the 1975 SPD. (Id. at T00555, T00571.  See supra ¶ 20.)

### 3.    1985 SPD

26.    In or about 1985, Tetley published and distributed an updated summary plan description to its employees. (App. 5 at T00611-692; App. 32 ¶ 12.) The 1985 SPD describes the benefits available to all employees, including those who previously worked for Tenco or Schonbrunn. All employees, whether enrolled in an HMO or covered under the John Hancock policy, received and were subject to the eligibility and other provisions of the 1985 SPD.

27.    The 1985 SPD superceded all prior SPDs. (App. 32 ¶ 10.)

28.    The introductory language at the beginning of the 1985 SPD provides that:

The Company [Tetley] intends to continue each of the Plans indefinitely, but must necessarily reserve the right to change or discontinue them at any time.

(App. 5 at T00613.)

29.    The provision entitled "Plan Continuance" in the medical benefits section of the 1985 SPD repeats that:

Tetley, Inc. hopes and expects to continue the Plan indefinitely, but reserves the right to change or terminate it if necessary.

(Id. at T00627.)

30.    A provision entitled "Termination of Insurance" in the medical benefits section of

the 1985 SPD describes the termination of retiree health benefits as follows:

> The insurance for you and your dependents ends when your
> employment with Tetley Inc. is terminated, if the Group Insurance
> Plan is discontinued, or if you stop making contributions.  Retirees
> will be allowed to continue coverage provided that contributions are
> also continued.  It is possible to continue coverage after termination
> of group insurance by converting to an individual Personal Health
> policy for which you must pay all premiums.

(Id. at T00615-16.)

### 4.    1989 SPD

31.    In November 1989, Tetley published and distributed a benefit highlights brochure

to employees ("1989 SPD").  (App. 6 at T00694-98; App. 32 ¶ 14.)  The 1989 SPD

superceded the previously issued SPD booklets.  (App. 32 ¶ 10.)  All employees, whether

enrolled in an HMO or covered under the John Hancock policy, received and were

subject to the eligibility and other provisions of the 1989 SPD.

32.    The 1989 SPD included a section describing the availability of medical benefits

for retirees.  (App. 6 at T00695.)  The eligibility provision provides that:

> If you are a full-time, permanent salaried or hourly employee, you
> will be eligible for Retiree Medical Benefits if you retire with at
> least 10 years of service with Tetley.  This eligibility requirement
> will only apply to you if you retire after July 1, 1991.  If you are
> covered by the "Grandfather Provision" (as described below), this
> eligibility requirement *does not* apply to you.
>
> *"Grandfather" Provision*

- 8 -

> If you are age 55 or over on July 1, 1991, you will be eligible for
> Retiree Medical benefits if you have at least five years of service
> with Tetley when you retire.

(Id.)

33.   The 1989 SPD also included a section entitled "Other Facts About Your Benefit

Plans." (Id. at T00697-99.)  The plan termination provisions of the 1989 SPD included

the following:

> The company [Tetley] expects and intends to continue the plans in
> your benefit program indefinitely but reserves its right to end each of
> the plans without notice, if necessary.  The company also reserves its
> right to amend each of the plans at any time without notice.
> . . .
>
> If a welfare plan (medical, dental, disability, life insurance) is
> terminated, you will not have any further rights – other than the
> payment of benefits for losses or expenses incurred before the plan
> was terminated.

(Id. at T00697.)

### 5.   1991 Letter Describing Changes to Retiree Medical Benefits

34.   On April 22, 1991, Tetley's Director of Human Resources sent a letter to all

Tetley salaried employees describing changes to the medical benefits available to retirees.

(App. 7 at T00700-704.)

35.   The letter reminded employees that the 1989 SPD had announced changes to the

service requirements, contributions, deductibles, and out-of-pocket limits applicable to

the retiree medical plan which were to take effect later in 1991 or 1992.  (Id.)

36.   The letter closes with the following:

- 9 -

> I am sure that you will agree that even with these changes, the Tetley
> Retiree Medical Plan is a very valuable benefit and one that is not
> standardly provided by very many companies because of the high
> cost. In fact, we are the only one of the sister companies (DCA,
> Dunkin Donuts and Baskin Robbins) that provides retiree medical
> benefits.
> . . .
>
> Tetley intends to continue the Retiree Medical Plan indefinitely, but
> must necessarily reserve the right to change or discontinue the Plan
> at any time.

(Id.)

### 6.    1993 SPD

37.    Tetley distributed another highlights brochure to its employees on or about

January 1993 ("1993 SPD"). (App. 8 at T00706-712; App. 32 ¶ 14.) The 1993 SPD

superceded all prior SPDs. (App. 32 ¶ 10.) All employees, whether enrolled in an HMO

or covered under the John Hancock policy, received and were subject to the eligibility

and other provisions of the 1993 SPD.

38.    The 1993 SPD includes a section describing the medical benefits available to

retirees. (App. 8) Various details of the plan were described in detail, including

eligibility requirements, cost, and covered expenses.

39.    The 1993 SPD includes a provision entitled "The Future of the Plans," which

provides as follows:

> Tetley intends to continue the plans described in this brochure
> indefinitely. But, since the future is unpredictable, the Company
> [Tetley] reserves the right to change, suspend or end any plan, or any
> provision, benefit coverage or contribution under any plan at any
> time.

Some possible reasons why a plan would end would be a revised, successor plan; merger, transfer or consolidation with another plan; or a change in economic conditions, laws, or corporate structure that would make the plan unfeasible as it currently exists.

If a plan should terminate, you'll receive all the benefits due you to the extent then funded or required by law under the terms of the plan.

In addition, if there is any conflict between the wording of any section of this brochure and the wording of the official plan documents, the plan documents will always govern.

(Id. at T00711.)

## II.    Tetley Benefit Strategy Project

40.    In 1994, Tetley assembled a team to study the company's benefits strategy ("benefits strategy team"). (See App. 11 at T00732-37.) The benefits strategy team was tasked with the project to "provide a competitive, high quality benefits package through the efficient and effective allocation of limited benefit dollars while balancing the needs of our associate population with the costs to both the associates and the company." (Id.)

41.    Among the goals of the project were "[t]o reduce future welfare benefit cost trend to at or below industry average . . . [and] [t]o maintain a high quality benefits package which is competitive when compared with other similar companies in our industry as measured by various benchmark benefit surveys." (Id.)

42.    The team sent Tetley employees regular updates in the form of company wide memoranda. (Id.)

43.     As an initial step to assist in the review and analysis of the benefits plan, the benefits strategy team retained a consultant to meet with focus groups of Tetley employees and to discuss potential changes.  (Id.)

44.     Based on the consultant's meeting with the employee focus groups, the benefits strategy team recommended that Tetley implement a managed care health program in 1995.  (Id. at T00735.)  At the same time, the team informed employees that the next phase of the project would involve developing "a longer term strategy for retiree medical coverage."  (Id.)

### III.    The United HealthCare Plan (July 1995 – December 2002)

45.     Effective July 1, 1995, medical coverage for active and retired employees was moved from John Hancock to United HealthCare ("UHC").  (App. 32 ¶ 4.)  Eligible employees and retirees could also elect to receive medical coverage through a participating HMO.  (Id. ¶ 5.)

46.     The United HealthCare plan ("the UHC Plan") was self-funded by Tetley and administered by UHC.  (App. 2 at T00388.)  Eligible retirees who elected coverage under the UHC Plan enrolled in one of two indemnity plans: one offering a mail-order prescription benefit only and the other offering a prescription card benefit in addition to the mail order benefit.  (Id. at T00389, T00393; Id. T00441, T00445.)

47.     The shift to the UHC Plan involved changes to the medical benefits available to retirees, including the standardization of deductibles and out of pocket maximums

regardless of the date of retirement and the addition of a mail order prescription drug benefit.

48.    Tetley had the right to terminate the UHC Plan upon thirty-days notice to UHC or upon any other date determined by written agreement between Tetley and UHC.  (Id. at T00388(a) ¶ B(1)(a)&(c).)

49.    Under the UHC Plan, employees remained "eligible for Retiree Medical benefits" provided that they met the applicable service requirements.  (Id. at T00398-99, T00448-50.)

50.    The UHC Plan contains the following termination provision:

  Retired Employee coverage ends on the earliest of the following:

  - The date you stop being an eligible Retired Employee as determined by the Employer.

  - The last day of a period for which contributions for the cost of coverage have been made, if the contributions for the next period are not made when due.

  - Effective for retirements beginning January 1, 1999, the date on which you reach Medicare eligibility.

  - The date on which this Plan ends.

(Id. T00420, T00478.)

51.    The UHC Plan also provides conversion coverage.  (Id. T00421, 479) ("If the covered Employee's or Retired Employee's group health coverage stops under this Plan, the covered Employee or Retired Employee may buy individual health insurance (called 'Conversion Coverage')").

- 13 -

**A.    Summary Plan Descriptions (SPDs) and Communications Describing the Tetley Employee Benefit Plans (1995 - 2001)**

52.    On May 11, 1995, Tetley's Director of Human Resources sent a letter to all retirees describing the changes to the medical benefits available to them that would become effective in July 1995.  (App. 12 at T00729-31.)  The letter stated that "[y]ou should be aware that Tetley has not made any commitment, express or implied, to continue your Retiree Medical Plan for any specific period of time, and that you have no vested right to the Retiree Medical Plan benefits.  Tetley reserves the right to amend or terminate the Retiree Medical Plan at any time."  (App. 12 at 00730.)

**1.    1995 SPD**

53.    In July 1995, Tetley published and distributed a summary plan description to its employees ("1995 SPD").  (App. 9 at T00714-20.)  All employees, whether enrolled in an HMO or covered under the UHC Plan, received and were subject to the eligibility and other provisions of the 1995 SPD.

54.    The 1995 SPD superceded all prior SPDs.  (App. 32 ¶ 10.)

55.    The 1995 SPD includes a section describing the medical benefits available to retirees.  (App. 9 at T00716-17.)  The eligibility provision in the 1995 SPD is substantially similar to the eligibility provision contained in the 1989 SPD.  (Id.  See supra ¶ 32.)

56.    The section describing the medical benefit plan highlights for retirees contains a provision entitled "The Future of the Plan," which provided as follows:

- 14 -

> Although Tetley intends to continue the Plan, the Company has not
> made any commitment, expressed or implied, to continue the Retiree
> Medical Plan for any specific period of time. Retirees have no
> vested right to Retiree Medical Plan benefits. Tetley reserves the
> right to amend or terminate the Retiree Medical Plan at any time.

(App. 9 at 00717.) The SPD also contained a substantially similar provision applicable to

all coverages available under the plan. (Id. at 00720.)

### 2.    1999 SPD

57.    In or about November 1998, Tetley issued another highlights brochure ("1999

SPD") reflecting certain changes to the medical benefits available to retirees.  (App. 10

at T00722-26.) The 1999 SPD superceded all prior SPDs.  (App. 32 ¶ 10.)

58.    The 1999 SPD contained, among other changes, different eligibility requirements

than the 1995 SPD. (Compare App. 9 at T00722 with ¶¶ 32, 55.) Under the 1995 SPD,

retirees with 10 years of Tetley service were eligible for retiree medical benefits.  Under

the 1999 SPD, only those employees at least 62 years old and having 10 years of Tetley

service (excluding years of service with a predecessor company) were eligible for retiree

medical benefits.  Both SPDs contained grandfather provisions with lower age or service

requirements for eligible employees. The sections addressing the "future of the plan" in

the 1999 SPD are substantially similar to those in the 1995 SPD. (Compare App. 9 at

T00722, T00725 with ¶ 56.)

59.    The 1999 SPD was issued to all new employees.  (App. 32 ¶ 16.)  All current

employees were informed in advance of the changes described in the 1999 SPD by letter

dated March 12, 1998. (App. 10 at T00727-28; App. 32 ¶ 16.) After describing the

- 15 -

changes to the eligibility requirements, the letter provided: "We have made changes in

our plans and eligibility in the past and do retain the right to make future changes."

(App. 10 at T00728.)  All employees, whether enrolled in an HMO or covered under the

UHC Plan, were subject to the eligibility and other provisions of the 1999 SPD.

## IV.    Termination of Medical Benefits for Retirees

### A.    <u>Active Employees</u>

60.    On March 15, 2001, Tetley sent a letter to all active employees informing them

that retiree medical benefits would no longer be available to employees retiring on or

after January 1, 2002.  (App. 13 at T00738-39.)  The medical benefits of existing retirees

remained unaffected.  (<u>Id.</u>)

61.    The March 15th letter also provided that:

> We have made changes in our benefit plans in the past and while
> Tetley intends to continue each of its benefit plans and programs
> indefinitely, the Company reserves the right to make any type of
> change to, or end, any plan, program or contribution at any time.

(<u>Id.</u> at T00739.)

62.    Tetley also sent a letter to all retired employees on March 15, 2001.  (App. 14.

<u>See</u> App. 15 at T00924; App. 16 at T00971; App. 17 at T00770; App. 18 at T01001; App.

19 at T00791; App. 20 at T00846; App. 21 at T00868; App. 22 at T00832; App. 23 at

T01024; App. 24 at T00900.)  That letter informed retirees that:

> On March 15, 2001, we notified active Tetley employees of a change
> to the availability of the Retiree Medical Plan.  As of January 1,
> 2002, the Retiree Medical Plan will not be available to **new** retirees.
> This change in the Plan eligibility does **<u>not</u>** affect you.

- 16 -

. . .

As in the past, while Tetley intends to continue its benefit plans and programs indefinitely, Tetley reserves the right to make any type of change to, or end, any plan, program or contribution at any time.

(App. 14.)

### B.    Retirees

63.    At a December 10, 2001 meeting of the board of directors of The Tetley Group Limited, which was then Tetley's parent company, the board considered a report prepared by Tetley regarding medical benefits available to retirees under the Tetley welfare plan and made a recommendation regarding the plan.[1]  (See Documents filed under seal on April 6, 2004.)

64.    On February 22, 2002, the Tetley board of directors voted to terminate the retiree health benefit plan effective June 1, 2002.  (Id.)

65.    On March 1, 2002, Tetley sent a certified letter to all retirees informing them that the retiree medical benefit plan was being terminated effective June 1, 2002.  (App. 15 at T00925-30; App. 16 at T00972-77; App. 17 at T00771-73; App. 18 at T01004-06; App. 19 at T00804-06; App. 20 at T00847-49; App. 21 at T00869-71; App. 22 at T00833-35; App. 23 at T01028-31; App. 24 at T00901-03.)

---

[1] Tetley has designated the entire contents of the board paper and meeting minutes as confidential, proprietary business information and subject to the conditions set forth in the Confidentiality Order dated March 11, 2004. Those portions subject to attorney-client privilege have been redacted.  Tetley submits the board paper and minutes under seal along with an accompanying notice.

66.    As set forth in the March 1st letter, Tetley anticipated that the cost of the retiree medical plan would reach $1 million in 2002, representing a significant percentage of Tetley's overall income.  (Id.)  The letter further noted that "Tetley is no longer a large company and the Retiree Medical Plan is a benefit that Tetley simply cannot afford to continue."  (Id.)

67.    Tetley further explained that it researched funding a more affordable plan but found that the administrative costs alone would have prevented Tetley from offering any meaningful level of medical benefits at an affordable cost.  (Id.)

68.    The letter provided information to assist retirees in finding additional coverage, including conversion plan benefit information, guidance regarding Medigap, and proof of insurance certificates.  (Id.)

## V.    The Individual Plaintiffs

### A.    Dubman

69.    Plaintiff Dubman ("Dubman") was hired by Tetley in April 1981.  From his date of hire through August 31, 1985, Dubman received his medical benefits under the terms of the John Hancock policy.  (App. 32 ¶ 17.)

70.    From September 1, 1985 through March 31, 1986, Dubman enrolled in an optional HMO medical benefits plan administered by Physicians Health Services, Inc. ("PHS).  Tetley does not have a copy of the contract that it had with PHS at that time.  (Id. ¶ 18.)

- 18 -

71.    Effective March 31, 1986, Dubman cancelled his PHS medical coverage and re-enrolled in the John Hancock medical plan.  Dubman continued receiving medical benefits under the John Hancock plan until January 1, 1995.  (Id. ¶ 19.)

72.    Effective January 1, 1995, Dubman cancelled his coverage under the John Hancock plan and re-enrolled with PHS.  (Id. ¶ 20.)

73.    PHS issued subscriber agreements directly to Tetley employees who elected PHS medical coverage.  Tetley has no knowledge as to whether PHS issued subscriber agreements in 1995.  (Id. ¶ 21.)  However, the PHS Subscriber Agreement dated January 1, 1996 is attached as Exhibit 26 to the Appendix.  ("1996 PHS Subscriber Agreement").

74.    The 1996 PHS Subscriber Agreement explains that medical benefits shall terminate "upon the failure of [Tetley] to pay the premium due or upon [Tetley's] notice to PHS that [Tetley] will no longer make payment."  (App. 26 at T01053 ¶ 7.)

75.    Tetley does not have a copy of the contract that it had with PHS in 1995.  However, the contract between Tetley and PHS effective September 1996 is attached as Exhibit 25 to the Appendix.  ("1996 PHS Agreement").  (App. 25 at T01031-36.)  The 1996 PHS Agreement includes the following termination provisions:

A.    Either PHS or [Tetley] may terminate this Agreement, but only upon giving written notice to the other party at least thirty (30) days prior to the Contract Anniversary date . . . . All rights to health care benefits under this Agreement and the Subscriber Agreement shall terminate as of the termination date specified in the notice.

B.    Either party to this Agreement may terminate this Agreement at any time during the term of this Agreement upon thirty (30) days written notice to the other party.

(<u>Id.</u> at T01035.)

76.    Dubman retired from Tetley in July 1999.  (App. 32 ¶ 22.)  As of the date of

Dubman's retirement, Tetley retiree medical benefits were provided to Dubman pursuant

to the PHS HMO plan and the 1999 SPD was the summary plan description in effect.

77.    The contract between Tetley and PHS in effect at the time of Dubman's retirement

includes the following termination provision:

> Section 6.2    <u>Your Option to Terminate Coverage</u>.    You [Tetley] may
> terminate this Agreement effective at the end of a contract period by giving
> Us [PHS] at least one month's prior written notice.

(App. 27 at T01079.)  The contract between Tetley and PHS in effect at the time of

Tetley's termination of the retiree medical program contained an identical termination

provision.  (App. 29 at T01186; App. 32 ¶ 23.)

78.    The PHS Subscriber Agreement in effect at the time of Dubman's retirement

explains that coverage ends when the subscriber agreement is terminated by either PHS

or Tetley.  (App. 28 at T01126 ¶ A(2) & B (1).)  The PHS Subscriber Agreement in effect

at the time of Tetley's termination of the retiree medical program contained identical

termination provisions.  (App. 30 at T01221-22; App. 32 ¶ 24.)

## B.    Fondaco

79.    Plaintiff Fondaco ("Fondaco") was hired by the Tenco division of the Coca-Cola

Company in February 1964.  Tetley acquired Tenco in February 1982.  (<u>See</u> <u>supra</u> ¶ 13.)

Fondaco retired from Tetley in February 1995.  (App. 19 ¶ 2.)

- 20 -

80.    Fondaco enrolled in an optional HMO medical benefits plan administered by US

Healthcare around the time that he became employed by Tetley. (App. 32 ¶ 26.)

Fondaco was continuously enrolled in a US Healthcare HMO plan until January 1, 2002

when US Healthcare discontinued its Medicare plan. (Id.) At that time, Fondaco

enrolled in the UHC plan. Accordingly, Fondaco was enrolled in the UHC plan at the

time that Tetley terminated the retiree medical plan. (Id.) As of the date of Fondaco's

retirement, however, Tetley retiree medical benefits were provided to Fondaco pursuant

to the US Healthcare HMO plan and the 1993 SPD was the summary plan description in

effect

81.    The Group Master Contract between Tetley and US Healthcare dated January 1,

1989 ("US Healthcare HMO plan") includes the following termination provision:

> The Contract Holder [Tetley] may terminate this Contract. This can
> be done at the end of any term of this Contract.

(App. 31 at T01260; App. 32 ¶ 27.) The 1999 US Healthcare HMO plan included a

similar termination provision.

### C.    Lattini

82.    Plaintiff Lattini retired from Tetley on July 1, 1991. (Compl. ¶ 13; App. 22,

(Lattini Affidavit) at ¶ 2.) As of the date of plaintiff Lattini's retirement, Tetley retiree

medical benefits were provided pursuant to the John Hancock group policy and the 1989

SPD was the summary plan description in effect. Plaintiff Lattini did not enroll in an

optional HMO plan at any time during his employment. (App. 32 ¶ 6.)

- 21 -

**D.    Jenkins**

83.    Plaintiff Jenkins retired from Tetley on March 1, 1998.  (App. 20 at T00841.)  As
of the date of plaintiff Jenkins's retirement, Tetley retiree medical benefits were provided
pursuant to the UHC group policy and the 1995 SPD was the summary plan description
in effect.  Plaintiff Jenkins did not enroll in an optional HMO plan at any time during her
employment.  (App. 32 ¶ 6.)

**E.    Johnson**

84.    Plaintiff Johnson retired from Tetley on May 1, 1991.  (Compl. ¶ 12; App. 21,
(Johnson Affidavit) at ¶ 2.)  As of the date of plaintiff Johnson's retirement, Tetley retiree
medical benefits were provided pursuant to the John Hancock group policy and the 1989
SPD was the summary plan description in effect.  Plaintiff Johnson did not enroll in an
optional HMO plan at any time during her employment.  (App. 32 ¶ 6.)

**F.    Smith**

85.    Plaintiff Smith retired from Tetley on January 1, 1992.  (Compl. ¶ 15; App. 24,
(Smith Affidavit) at ¶ 2.)  As of the date of plaintiff Smith's retirement, Tetley retiree
medical benefits were provided pursuant to the John Hancock group policy and the 1989
SPD was the summary plan description in effect.  Plaintiff Smith did not enroll in an
optional HMO plan at any time during his employment.  (App. 32 ¶ 6.)

**G.    Adams**

86.    Plaintiff Adams retired from Tetley on July 1, 1991.  (Compl. ¶ 6; App. 15,
(Adams Affidavit) at ¶ 2.)  As of the date of plaintiff Adams's retirement, Tetley retiree

medical benefits were provided pursuant to the John Hancock group policy and the 1989 SPD was the summary plan description in effect. Plaintiff Adams did not enroll in an optional HMO plan at any time during his employment. (App. 32 ¶ 6.)

**H.    Cerreta**

87.    Plaintiff Cerreta retired from Tetley on March 1, 1992. (Compl. ¶ 7; App. 16, (Cerreta Affidavit) at ¶ 2.) As of the date of plaintiff Cerreta's retirement, Tetley retiree medical benefits were provided pursuant to the John Hancock group policy and the 1989 SPD was the summary plan description in effect. Plaintiff Cerreta did not enroll in an optional HMO plan at any time during his employment. (App. 32 ¶ 6.)

**I.    Di Benedetto**

88.    Plaintiff Di Benedetto retired from Tetley on February 1, 1995. (Compl. ¶ 8; App. 18, (Di Benedetto Affidavit) at ¶ 2.) As of the date of plaintiff Di Benedetto's retirement, Tetley retiree medical benefits were provided pursuant to the John Hancock group policy and the 1993 SPD was the summary plan description in effect. Plaintiff Di Benedetto did not enroll in an optional HMO plan at any time during his employment. (App. 32 ¶ 6.)

**J.    Mayes**

89.    Plaintiff Mayes retired from Tetley on February 1, 1993. (Compl. ¶ 14; App. 23 at T01012.) As of the date of plaintiff Mayes's retirement, Tetley retiree medical benefits were provided pursuant to the John Hancock group policy and the 1993 SPD was the summary plan description in effect. Plaintiff Mayes did not enroll in an optional HMO plan at any time during his employment. (App. 32 ¶ 6.)

TETLEY USA INC.

By _____

Theodore J. Tucci (ct05249)
ttucci@rc.com
Michael J. Kolosky (ct22686)
mkolosky@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

- 24 -

## **CERTIFICATION**

This is to certify that a copy of the foregoing was hand-delivered to the following on this 6th day of April, 2004:

Steven A. Levy, Esq.
Friedman, Newman, Levy,
  Sheehan & Carolan, P.C.
One Eliot Place
Fairfield, CT 06824

and sent by first-class mail, postage prepaid, to the following on the 6th day of April, 2004:

Alvin Green, Esq.
Seham, Seham, Meltz & Peterson
145 E. 48th Street, Suite 5F
New York, NY 10017


_____
Theodore J. Tucci