UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
JUN 10  2 10 PM '04
U.S DISTRICT COURT
NEW HAVEN, CONN

| | |
|---|---|
| VEILA VEYONNE ADAMS, ) <br> ANTHONY L. CERRETA, ) <br> SALVATORE SAM DIBENEDETTO, ) <br> HOWARD DUBMAN, ) <br> PETER FONDACO, ) <br> GLORIA ANNETTE PEARSON JENKINS, ) <br> BARBARA ANNE JOHNSON, ) <br> JOSEPH A. LATTINI, ) <br> CRESSIE M. MAYES, Individually and as ) <br> Representative of HENRY FOSTER MAYES, and ) <br> ARTHUR J. SMITH ) <br> ) <br> PLAINTIFFS, ) <br> ) <br> v. ) <br> ) <br> TETLEY USA INC. ) <br> ) <br> DEFENDANT. ) | CIVIL ACTION NO. <br> 303 CV 649 (JBA) <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> JUNE 7, 2004 |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

Pursuant to D. Conn. L. Civ. R. 7(d), defendant Tetley USA Inc. ("Tetley") hereby submits this reply brief in response to plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition") dated May 12, 2004.

**I.    ARGUMENT**

**A.    The 1975 Plan Documents Do Not Promise Lifetime Retiree Medical
Benefits and Contain Unambiguous Reservation of Rights Provisions**

Plaintiffs argue that their contractual vesting claims should survive summary judgment because the 1975 plan documents lack "any clear and unambiguous reservation of rights

("ROR") for Tetley to terminate or cancel health benefits of retirees."[1] (Opp. at 3.) Plaintiffs' reliance on the 1975 plan documents is misplaced for two reasons. First, the law is clear that the absence of a reservation of rights standing alone is insufficient to avoid summary judgment on a contractual vesting claim. (See Def.'s Mem. in Support of Mot. for Summ. Judg. dated 04/06/04 ("Def.'s Mem.") at 8-9, 23-24.) Second, plaintiffs' assertion has no factual basis because the record in this case shows that the 1975 plan documents do contain explicit reservation of rights provisions explaining that Tetley could terminate the plan at any time. (See Def.'s Local R. 56 Stmt. ("Def.'s R56 Stmt.") dated 04/06/04 at 2-6.)

1. **Plaintiffs Fail to Identify Any Language that Can Reasonably be Construed as Promising Lifetime Retiree Medical Benefits**

It is well established that an employer does not have the burden of identifying plan language that limits the duration of retiree medical benefits in order to obtain summary judgment. Joyce v. Curtis-Wright Corp., 171 F.3d 130, 136 (2d Cir. 1999). Instead, an employee must identify "specific written language that is reasonably susceptible to interpretation as a promise" of lifetime retiree medical benefits to avoid judgment against his or her vesting claims. Abbruscato v. Empire Blue Cross & Blue Shield, 274 F.3d 90, 97 (2d Cir. 2001) (quoting Joyce, 171 F.3d at 134.) For this reason, the mere absence of a reservation of rights does not allow a plaintiff to avoid summary judgment unless the plaintiff can show that plan documents contain a promise to provide lifetime benefits. McMunn v. Pirelli Tire, LLC, 161 F. Supp. 2d 97, 115 n.80 (D. Conn. 2001) (recognizing that "the absence of language flatly

---

[1] Plaintiffs concede that Tetley's plan documents contain enforceable reservation of rights provisions from 1985 forward, describing such documents as "clear and unambiguous." (Opp. at 2, 16, 25.) Accordingly, plaintiffs' contractual vesting claims are based solely on the plan documents in effect before 1985 (i.e. the 1975 plan documents) and their individual retirement agreements, if any. (Id.)

2

rejecting the concept of vesting does not alter the retiree's failure to identify language that affirmatively operates to imply vesting") (quoting Joyce, 171 F.3d at 135.)

Plaintiffs argue that the 1975 plan documents are ambiguous in that they provide "that health insurance benefits would continue for so long as one was a member of an eligible employee class which included 'salaried retirees.'"[2] (Opp. at 15.) Plaintiffs argue that this language constitutes a promise to provide lifetime medical benefits to retirees because the term of the medical benefit is not specifically limited (i.e. by age or term limit). (Id. at 15-16 (citing App. 3 at T00501).) As Tetley has demonstrated already, this argument fails because no ambiguity as to vesting is created by the absence of durational language limiting the term of a benefit. (Def.'s Mem. at 19 (citing McMunn, 161 F. Supp. 2d at 106, 119).) Plaintiffs can find no other alleged ambiguity to support a claim of vested retiree medical benefits. Because plaintiffs have already conceded that the plan documents from 1985 forward are clear and unambiguous, and cannot find any language which can reasonably be construed as a promise to provide irrevocable retiree medical benefits in the 1975 documents, Tetley is entitled to summary judgment. Even if plaintiffs could identify some allegedly ambiguous language in the 1975 plan documents, that ambiguity would be remedied by the clear reservation of rights provisions contained therein.

---

[2] None of the plaintiffs allege to have actually read or relied on the 1975 plan documents. Accordingly, even if plaintiffs were to identify some purportedly ambiguous language in those documents, plaintiffs have not alleged that they continued their employment in reliance on any promise of lifetime retiree benefits contained therein. See Kunkel v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 84-85 (2d Cir. 2001) (finding that "after plaintiffs began performance, **pursuant to the pre-1987 SPDs**, [the employer] was not free to revoke") (emphasis added). For this reason, plaintiffs vesting claims fail as a matter of law.

## 2. Any Potential Ambiguity as to Vesting is Cured By Tetley's Explicit Reservation of Rights

Plaintiffs assert without support that "[n]owhere in the Hancock booklet and pre-1985 documents that were in effect when the Plaintiffs commenced working for Tetley, was there any clear and unambiguous reservation of rights for Tetley to terminate or cancel health benefits of retirees." (Opp. at 3.) The undisputed facts, however, show that the 1975 plan documents contain unambiguous reservation of rights provisions. (Compare Def.'s R56 Stmt. at ¶¶ 11-12, 20-21, with Pls.' R56 Stmt. at 2. See App. 1 at T00017, 21; App. 3 at T00500, 514.) Even crediting plaintiffs' ambiguity claim, any potential ambiguity in these documents is cured by the explicit reservation of rights provisions appearing in both the 1975 John Hancock policy and the 1975 SPD. Abbruscato, 274 F.3d at 99-100 (holding that a welfare benefit is not vested if the plan document which is arguably ambiguous as to vesting also contains a reservation of rights). (See Def.'s Mem. at 9.)

The John Hancock policy issued in 1975 contains a reservation of rights in two separate sections; one appearing under the heading "Discontinuance of Insurance of Employees" (App. 1 at T00017) and the other under the policy's general amendment, renewal, and termination provisions (id. at T00021). The 1975 SPD also contains two explicit reservation of rights provisions. (App. 3 at T00500, 514.) The first appears in the introduction to the SPD, where it reads that:

> No amendment, renewal, or termination of the Policy shall require the consent of or notice to any employee or beneficiary or any other person having a beneficial interest thereunder.

(Id. at T00500. See Def.'s R56 Stmt. at ¶ 21.) The SPD makes plain that the benefits under the policy are subject to amendment or termination without notice to or consent by employees. The second reservation of rights appearing in the 1975 SPD is found under the termination provisions applicable to all coverages other than contributory life insurance. (App. 3 at T00514. See Def.'s R56 Stmt. at ¶ 20.) Like the reservation of rights contained in the policy provisions, this reservation of rights makes clear that all coverages (but for life insurance) shall end upon Tetley's termination of the policy and that any specific coverage shall be discontinued for an employee upon termination of that coverage for the class of employees to which the employee belongs. (App. 3 at T00514. See Def.'s R56 Stmt. at ¶ 20.) In light of these clear and unambiguous reservation of rights provisions, no factual basis exists to support plaintiffs' purported understanding that their retiree medical benefits had vested.

### 3. Extrinsic Evidence Cannot be Considered because the Plan Documents are Unambiguous

Plaintiffs' claim that the 1975 plan documents contain "obtuse language" describing available benefits and no reservation of rights fails upon examination of the undisputed factual record. (Compare Def.'s R56 Stmt. at ¶¶ 11-12, 20-21, with Pls.' R56 Stmt. at 2. See App. 1 at T00017, 21; App. 3 at T00500, 514.) The plain language of the 1975 plan documents provides that retirees had the option of continuing their health insurance through retirement on the same terms as active employees subject to Tetley's right to amend or terminate the plan at any time and for any reason. (Id.) Plaintiffs have pointed to no language in the 1975 plan documents that is ambiguous or that promises lifetime medical benefits. As a result, plaintiffs are prohibited

from relying on extrinsic evidence in support of their contractual vesting claims.[3] Abbruscato, 274 F.3d at 98; McMunn, 161 F. Supp. 2d at 111 (finding that "[t]his rule gives effect to ERISA's requirement that plans and SPDs be the primary means of informing beneficiaries and participants of their and their employer's rights and obligations under the plans"). (See Def.'s Mem. at 8-9.) Accordingly, plaintiffs are barred from relying on benefit outlines, exit letters, or any other documents outside of the policy and the 1975 SPD in support of their vesting claims.[4] See Kunkel, 274 F.3d at 85 n.7 (finding that "exit letters given to retiring employees which describe the retiree's . . . benefits" constitute extrinsic evidence of the benefit plan).

**B. Plaintiffs' Claim of Reliance on the Absence of a Reservation of Rights in Isolated Communications Fails as a Matter of Law**

Plaintiffs' breach of fiduciary duty claim is based on Tetley's alleged failure "to include a clear reservation of rights in its communication with Plaintiffs . . . when inquiries were made [regarding retirement benefits]." (Opp. at 24.) Plaintiffs allege that, because Tetley did not affirmatively advise or remind plaintiffs of its right to terminate retiree health benefits in some isolated benefit outlines and exit letters, plaintiffs "were not disabused of their reasonably founded belief that health benefits would continue through retirement." (Id. at 23.) This argument fails for two reasons. First, Tetley has already demonstrated the accuracy of communications that plaintiffs rely on in support of the fiduciary duty claims in its earlier

---

[3] The first fourteen pages of plaintiffs' opposition address the individual circumstances of each of the individual plaintiffs and include multiple references to communications that are extrinsic to the plan documents. (Pls.' Opp. at 1-14.) This approach puts the cart before the horse. Because plaintiffs are unable to demonstrate any ambiguity as to vesting in the plan documents, extrinsic evidence is not relevant and cannot be considered in support of their vesting claims. Abbruscato, 274 F.3d at 98; McMunn, 161 F. Supp. 2d at 111.

[4] As more fully set forth in Tetley's brief in support of summary judgment, five of the plaintiffs (Dubman, Mayes, Smith, Fondaco, and Di Benedetto) may arguably be allowed to rely on their individual retirement agreements in support of their contractual vesting claims. (Def.'s Mem. at 16 n. 5-6 and accompanying text). Tetley addresses the individual retirement agreements of these plaintiffs in its original memorandum of law. (Id. at 16-21.) The remaining five plaintiffs (Adams, Cerreta, Jenkins, Johnson, and Lattini) rely solely on the 1975 plan documents in support of their vesting claims.

6

memorandum. (Def.'s Mem. at 21-29.) More importantly, however, plaintiffs have failed to set forth any reasonable basis to support a conclusion that their retiree medical benefits were irrevocable. (See id.) For these reasons, plaintiffs' breach of fiduciary duty claims fail as a matter of law.

In order to succeed on their breach of fiduciary duty claims, plaintiffs must demonstrate that Tetley made a material misrepresentation as to the revocability of the retiree medical benefit while acting in a fiduciary capacity and that plaintiffs *reasonably relied* on that misrepresentation to their detriment. (See id. at 22.) Plaintiffs admit that no reliance claims can be based on Tetley's plan documents from 1985 forward because of the unambiguous reservation of rights provisions contained in such documents. (Opp. at 2, 16, 25.) Plaintiffs also do not challenge the fact that Tetley regularly distributed its SPDs to its active and retired employees (R56 Stmt. at ¶¶ 15, 17, 22, 26, 31, 37, 53, 59) and repeatedly explained that retiree health benefits were subject to modification or termination at any time (id. at ¶¶ 34-36, 40-44, 52, 60-62). For more than twenty years, Tetley affirmatively and systematically informed its employees that retiree medical benefits were not vested. (Id. at ¶¶ 15, 17, 22, 26, 31, 34-37, 40-44, 52-53, 59-62). Considering the full history of Tetley's communications in their entirety, it is unreasonable as a matter of law for plaintiffs to construe a few isolated communications that did not include a reservation of rights as promises to provide them with irrevocable medical benefits. McMunn, 161 F. Supp. 2d at 124 (holding that "the particular context in which representations are made is crucial to assessing whether a representation about the duration of benefits is accurate or misleading"). Even construed in a light most favorable to the plaintiffs, all of those communications were accurate at the time they were made and none of them contain any

7

affirmative language capable of being interpreted as a promise to provide lifetime benefits. (See Def.'s Mem. at 21-28.) Plaintiffs' breach of fiduciary claim fails as a matter of law in that it is based on nothing more than the occasional absence of a reservation of rights in various informal communications. McMunn, 161 F. Supp. 2d at 124 (noting that an employer does not have a duty to tell "retirees at every possible opportunity that which it had told them many times before – namely that the terms of the plan were subject to change") (quoting Sprague v. General Motors, Inc., 133 F.3d 388, 405 (6th Cir. 1998).) Plaintiffs focus on these isolated instances in an effort to avoid the fact that Tetley never promised to provide them with lifetime retiree medical benefits.[5]

## C.    Plaintiffs' New Promissory Estoppel Claim Fails as a Matter of Law

Plaintiffs' promissory estoppel claim was raised for the first time in plaintiffs' opposition to Tetley's motion for summary judgment. (See Compl. dated 04/10/03.) Under the federal rules, a claim must be set forth in the pleadings in order to give the defendant fair notice of the nature of plaintiffs' causes of action. Fed. R. Civ. P. 8(a); Conley v. Gibson, 355 U.S. 41, 47 (1957). Thus, it is inappropriate for plaintiffs to raise a new claim at this stage of the proceedings as doing so has prejudiced Tetley's ability to move for summary judgment regarding plaintiffs' promissory estoppel claim.[6] See Beckman v. United States Postal Serv., 79 F. Supp. 2d 394, 407-08 (S.D.N.Y. 2000) (finding that "leave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting

---

[5] Plaintiff Dubman is the only plaintiff who alleges that he was promised lifetime medical benefits. (See Def.'s Mem. at 27-28.) As is more fully set forth in Tetley's memorandum of law, Dubman cannot have reasonably relied on the alleged misrepresentation given that he entered into a written retirement agreement the following year which contained an explicit reservation of rights. (Id.)
[6] Although Tetley believes that it is appropriate to grant summary judgment against plaintiffs' promissory estoppel claim for the reasons set forth below, Tetley reserves its right to conduct further discovery and to file an amended motion for summary judgment as against plaintiffs' promissory estoppel claim if Tetley's instant motion is denied.

8

a motion . . . for summary judgment, particularly when the new claim could have been raised earlier").

Plaintiffs acknowledge that a viable promissory estoppel claim requires proof of the following: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." Kunkel 274 F.3d at 85. "Additionally, an ERISA plaintiff must adduce not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to satisfy an 'extraordinary circumstances' requirement as well." Id. (quoting Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 151 (2d Cir. 1999).) The extraordinary circumstances requirement is satisfied only if plaintiffs can demonstrate that Tetley intentionally induced them to take some action or forbearance in reliance on a misrepresentation. See id. at 86-87.

Plaintiffs' promissory estoppel claim[7] fails for the same reasons as their breach of fiduciary duty claim: plaintiffs have failed to identify any language promising them lifetime retiree medical benefits and plaintiffs reliance on the absence of a reservation of rights in a few isolated communications is insufficient as a matter of law. (See supra pages 5-7.) Even construed in a light most favorable to plaintiffs, plaintiffs fail to identify any affirmative language reasonably susceptible to being interpreted as a promise to provide lifetime benefits. (Id.) Plaintiffs' supposed interpretation and reliance on a few isolated statements that did not include a reservation of rights as constituting a promise lifetime retiree medical benefits fails in light of the factual record showing that Tetley had affirmatively and regularly informed its employees that the retiree medical plan was subject to modification or termination at any time.

---

[7] Plaintiffs allege that only "Adams, Di Benedetto, Dubman, Fondaco, Lattini, and Smith satisfy the essential requirements of promissory estoppel." (Opp. 21.) Accordingly, Tetley assumes that the remaining plaintiffs (Cerreta, Jenkins, Johnson, and Mayes) are not pursuing promissory estoppel claims.

9

See McMunn, 161 F. Supp. 2d at 124 (holding that "the particular context in which representations are made is crucial to assessing whether a representation about the duration of benefits is accurate or misleading"). Accordingly, Tetley's motion for summary judgment should be granted with respect to plaintiffs' promissory estoppel claim.

## II. CONCLUSION

For the foregoing reasons, and for those set forth in Tetley's memorandum of law and statement of undisputed fact in support of summary judgment, Tetley's motion should be granted and judgment should enter against plaintiffs on all claims.

DEFENDANT,

TETLEY USA INC.

By_____
Theodore J. Tucci (ct05249)
ttucci@rc.com
Michael J. Kolosky (ct22686)
mkolosky@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

## CERTIFICATION

This is to certify that a copy of the foregoing was sent by first class mail to the following on this 7th day of June, 2004:

Steven A. Levy, Esq.
Friedman, Newman, Levy,
 Sheehan & Carolan, P.C.
One Eliot Place
Fairfield, CT 06824

Alvin Green, Esq.
Seham, Seham, Meltz & Peterson
145 E. 48th Street, Suite 5F
New York, NY 10017

_____
Michael J. Kolosky